Argued November 20, 1918, affirmed February 11, rehearing denied April 1, 1919.

# HODSON–FEENAUGHTY CO. *v.* COAST CULVERT & FLUME CO.

(178 Pac. 382.)

**Principal and Agent—Contracts—Commissions.**

1. A contract giving plaintiff an exclusive sales agency with exceptions *held* to entitle plaintiff to commissions on sales made by defendant direct to the trade unless the sales fell within the exceptions.

> [As to general value respecting the authority of agents, see note in 16 Am. St. Rep. 493.]

**Principal and Agent—Contracts—Construction by Parties.**

2. Where defendant acquiesced in plaintiff's claim to commissions on sales made by defendant direct to the trade, *held*, that the contract giving plaintiff an exclusive sales agency with exceptions should be construed entitling plaintiff to such commissions.

**Contracts—Construction—Divisible Contracts.**

3. Whether a contract is entire or severable is a question of intention to be determined from the language used and the subject matter.

**Principal and Agent—Contracts—Commissions.**

4. A contract giving plaintiff an exclusive sales agency with exceptions *held* to entitle plaintiff to commissions on sales made by defendant direct, though plaintiff did not prove complete performance

of the contract which required plaintiff to canvass the trade, where the direct sales were not made to customers whom plaintiff failed to canvass and did not fall within the exceptions.

## ON PETITION FOR REHEARING.

**Trial—Instructions—Requests—Applicability to Issues.**

5. No claim being made by plaintiff for commissions on account of orders taken by it, but the only claim being by defendant for damages because they were not delivered to it to fill, there was no error in refusing defendant's requested instruction that plaintiff was not entitled to commissions thereon, and giving, instead, one merely as to defendant's right to damages.

**Principal and Agent—Termination of Agency—Subsequent Duty of Agent.**

6. Defendant, on termination, by limitation, of plaintiff's agency, having written that it was not then in a position to renew it, but would try to fill all orders sent, there was no contract, and plaintiff was under no duty to send it any orders thereafter taken by plaintiff.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

The defendant appealed from a judgment obtained by the plaintiff. Each of the litigants is a corporation. During the years 1914 and 1915 certain sales of culverts were made upon which commissions are claimed by the plaintiff; the defendant denies liability for commissions; and hence this lawsuit. In 1901 a corporation known as Beall & Company was organized for the purpose of dealing in road machinery and other equipment used in road work. In 1903 or 1904 the company "started in" to sell culverts. The company sent out circulars and also maintained a corps of traveling salesmen who regularly visited county and city officers and other users of culverts.

The Coast Culvert & Flume Company manufactured culverts. The defendant was not created until after the organization of Beall & Company. John S. Beall, who owned a controlling interest in and was the manager of Beall & Company, acquired a controlling interest in the Coast Culvert & Flume Company. Beall &

Company acted as selling agent for the Coast Culvert & Flume Company from the time of the creation of the latter and hence the Coast Culvert & Flume Company did not "have any traveling salesmen or agents out through the state or territory," although the manager of the company "went out now and then on deals." On July 1, 1912, the Coast Culvert & Flume Company, as party of the first part, and Beall & Company, as party of the second part, entered into a written agreement, which in so far as it is material here, reads as follows:

"The party of the first part does by these presents grant unto the party of the second part the exclusive selling agency in the states of Oregon, Washington and Idaho on all styles of culvert and fluming manufactured by the first party from this date until July 1st, 1913, on the conditions herein named, to be kept and performed.

"The party of the second part agrees to accept the said selling agency and work the trade in a good and business-like manner to the best of its ability, on the terms and conditions named in this contract. * *

" * * All sales made by the party of the second part shall be subject to the approval and acceptance of the party of the first part.

"The party of the first part is to render the party of the second part all the assistance in its power in helping further the sale of its products by the second party.

"The party of the first part shall pay to the party of the second part its full commissions on all orders that are received by the party of the first part for culvert and fluming from anyone in the states of Oregon, Washington and Idaho, whether the sales are made directly or not by the second party, and the books of the party of the first part pertaining to sales in the above named territory, are to be subject to the inspection of the second party or its representatives any time they desire it.

"The party of the first part shall send to the party of the second part a written memorandum for all orders for culvert and fluming that are sent in direct from customers in Oregon, Washington and Idaho, stating on such memorandums the name of the customer, the shipping point, with an itemized list of the goods purchased.

"The party of the first part shall furnish to the party of the second part an exact duplicate of each invoice for all culvert and fluming shipped to parties in Oregon, Washington and Idaho as soon as the shipment is made, with the second party's commission noted in plain figures on the bottom of each duplicate invoice.

"All commissions on sales made by the second party shall be due and payable to the second party by the first party on the first of each month after the first party has received pay from the purchasers and the first party is to render the second party an itemized list of all collections accompanied by check the first of each month.

"Should Beall & Company call on the Coast Culvert & Flume Company to go out and assist in making sales, Beall & Company are to pay all expenses.

"The party of the first part is to use due diligence in making collections for all culvert and fluming sold in Oregon, Washington and Idaho promptly on its due date, and to keep the second party advised of all bills that are unpaid and thirty days past due.

"Should the party of the second part find it absolutely necessary in order to meet legitimate competition at any time to vary from the prices named in this contract, it is to advise them of the conditions that exist and the prices necessary to quote in order to get the business, and if it is found advisable by both the party of the first part and the party of the second part to make the concession to get the order, the concessions made are to be borne equally by the party of the first part and the party of the second part."

Although this agreement, which has just been quoted, was primarily intended to cover a period of one year ending on July 1, 1913, nevertheless upon the expiration of the year the parties continued to act under it until July 1, 1914.

On January 19, 1914, John S. Beall and his brother sold all their stock in Beall & Company to C. W. Hodson, W. O. Feenaughty and E. L. Thompson; and from the time of such sale the business of this corporation was managed by its principal officers C. W. Hodson and W. O. Feenaughty. John S. Beall did not sell any of his stock in the Coast Culvert & Flume Company and there is evidence to the effect that the business of that corporation was conducted in accordance with his directions and management. On March 13, 1914, the corporate name of the plaintiff was changed from Beall & Company to Hodson-Feenaughty Company.

About July 1, 1914, the parties commenced to negotiate for a new contract and these negotiations resulted in an agreement in the form of a letter which is dated August 17, 1914, and was written by the Coast Culvert & Flume Company through John S. Beall, its president, and through its secretary to Hodson-Feenaughty Company. The plaintiff indorsed its acceptance upon the letter. The material part of this written contract is as follows:

"Hodson-Feenaughty Company,
    "Portland, Oregon.
"Gentlemen:
    "First: We will give you the exclusive selling agency in the states of Oregon, Idaho and such parts of Washington as we supply, for the Riveted, Flat Bottom, and Foster Nestable Corrugated iron culvert made by us, for a period of one year from July 1st, 1914, (excepting counties noted in paragraph No. ten, cities, towns, new railroads and irrigation projects, which trade we

retain the right to solicit and sell in conjunction with you) upon the following conditions:

"Second: You to work the trade in a first-class businesslike manner, by having sufficient number of good salesmen who are well informed in culverts (especially American Ingot Iron) to thoroughly work the trade and call on all users of culvert regularly and often; to keep the trade thoroughly circularized with printed matter furnished by us, and by doing everything else in your power consistent with good business to keep the superiority of American Ingot Iron culvert properly before culvert users.

"Third: You are to keep us fully advised in writing of all prospective customers for culvert who may desire to purchase in the future, so that we may assist you in keeping the goods properly before them.

"Fourth: Should you come into competition with corrugated culvert offered from other sources, you are to advise us in ample time before an order is lost, when we will, if possible and you so desire, send a special salesman to assist your salesman in making such sale; you to pay the salary and other expenses of our special salesman in such effort. Should it become necessary to make a concession in price to effect a sale, such concession to be borne equally between us, should we accept the order, we to have the privilege of declining to fill orders taken by you at prices below those provided in our regular price lists. No concession to be made on American Ingot Iron culverts without our approval. Should our salesmen originate culvert orders from any of your customers when your salesmen are not on the ground, we are to have one-half of your regular commission as compensation of such sales.

"Fifth: You are to guarantee the legality of all orders taken by you and sent to us from municipalities, and are to guarantee payment for all orders from individuals or contractors sent us by you, on which the credit risk is not satisfactory to us. Before filling such orders we are to advise you by telephone and confirm our objections in writing, and are to obtain your written authority for shipment before this clause be-

comes effective. In such cases the guarantee is to be made good by you to us, not later than three months after the date the account becomes delinquent, with 7% interest after said three months. * *

"Eighth: Duplicate invoices with your commission noted on same will be sent to you covering all sales made within your territory on which commissions would be due you, including orders received direct by us, except as provided in paragraphs one and ten thereof.

"Ninth: Your commissions are due and payable on the first of the month after we have received full settlement, payment to be made to you in the same manner as received by us.

"Tenth: Should you lose the trade of established customers to a competitor, or be unable to close a sale, we are to have the privilege of taking over such customers as our own prospects and solicit them in our own way without being liable to you for commissions on such sales as we make to them. We will try to keep you advised in writing of such customers so as to avoid conflict between our salesmen and yours; but should your salesmen secure orders, at prices and terms satisfactory to us, which would belong to us under the above clause, you will be entitled to your regular commission on such sales. * *

"Twelfth: We will render you all reasonable friendly assistance in helping you make sales; you are to render us all reasonable aid in helping us to make collections on sales made by you, and endeavor to see that customers thoroughly understand installation of culverts according to our printed instructions, and to furnish us information, photographs, etc., such as you can obtain, showing faulty design or installation of concrete, terracotta and other culverts found in your territory."

For convenience the agreement dated July 1, 1912, will be referred to as exhibit "A" and the contract entered into on August 17, 1914, will be designated as exhibit "B." The controversy relates to sales of cul-

verts made to Wahkiakum County in Washington, and to the counties of Grant, Crook, Malheur, Gilliam, Yamhill and Wallowa in Oregon and also to sales made by the Polson Implement Company of Seattle of culverts on consignment. On March 30, 1914, culverts valued at $190 were sold to Grant County. Between January 1, 1914, and June 30, 1914, the Polson Implement Company made sales amounting to $1,806.93.

The plaintiff alleges and the defendant concedes that between July 1, 1914, and June 30, 1915, the following sales were made: On August 18, 1914, to Crook County, $3,428; on August 27, 1914, to Crook County, $3,428; in February or March, 1915, to Malheur County, $2,048; on March 27, 1915, to Gilliam County, $150; on May 1, 1915, to Yamhill County, $414.60; in April, 1915, to Wahkiakum County, $470.28 and $979.52. During the period commencing with July 1, 1914, and ending June 30, 1915, the sales made by the Polson Implement Company of culverts kept on consignment aggregated $1,721. In addition to the admitted sales the plaintiff claims that sales of culverts were made as follows: On March 30, 1915, to Yamhill County, $78.72; on April 15, 1915, to Yamhill County, $102.84; on April 18, 1915, to Wallowa County, $408.24; on April 19, 1915, to Wallowa County, $89.78; and on April 27, 1915, to Wallowa County, $1,033.34.

The complaint embraces two causes of action. The first cause of action includes the sale made to Grant County and the sales made by the Polson Implement Company prior to June 30, 1914. The second cause of action includes the sales made by the Polson Implement Company from July 1, 1914, to June 30, 1915, the admitted sales to the counties of Crook, Malheur, Gilliam, Yamhill and Wahkiakum, and also the alleged sales to the counties of Yamhill and Wallowa. The

first cause of action is introduced with recitals concerning the corporate capacity of the parties, the change of the name of the plaintiff and the execution of exhibit "A"; and then follow three paragraphs, the first of which relates to the sale to Grant County, the second refers to the agreement between the plaintiff and the defendant concerning the consignment of culverts to Polson Implement Company and the third tells about the sales made by the Polson Implement Company during the period commencing with January 1, 1914, and ending June 30, 1914. The paragraph which deals with the sale to Grant County reads as follows:

"That in pursuance of said contract, and in conformity therewith, there was sold on the 30th day of March, 1914, a quantity of 16–gauge Nestable American Ingot Iron culvert, for defendant, to Grant County, Oregon, in the amount of one hundred ninety dollars ($190.00), upon which, under the terms of said agreement between plaintiff and defendant, plaintiff was entitled to a commission of fifteen per cent (15%), amounting to twenty-eight and 50/100 dollars ($28.50); which said sum of one hundred ninety dollars ($190.00) was paid to defendant on or about the 25th day of April, 1914, by Grant County; but defendant has failed, neglected and refused to pay plaintiff the said commission of twenty-eight and 50/100 dollars ($28.50), or any part thereof."

That portion of the complaint which deals with the second cause of action opens with an account of the execution of exhibit "B" and then the plaintiff gives a detailed statement of the sales which are alleged to have been made between July 1, 1914, and June 30, 1915, to the counties of Crook, Malheur, Gilliam, Yamhill, Wallowa and Wahkiakum and the sales made by the Polson Implement Company. Each sale is treated

of in a separate paragraph. The following paragraph which relates to one of the two sales to Crook County exemplifies the remaining paragraphs dealing with the other sales:

"That in pursuance of said contract so made between plaintiff and defendant, and in conformity therewith, there was sold on the 18th day of August, 1914, to Crook County, Oregon, a quantity of Armco American Ingot Iron, 14 and 16-gauge, riveted culvert, furnished by defendant, amounting, to the sum of thirty-four hundred twenty-eight dollars ($3,428.00); upon which said sale plaintiff was then and there entitled to a commission of eight hundred fifty-seven dollars ($857.00), and which said sum of thirty-four hundred twenty-eight dollars ($3,428.00) was paid by said Crook County to defendant, on the 18th day of September, 1914; that defendant has not paid plaintiff said sum of eight hundred fifty-seven dollars ($857.00), or any part thereof."

The complaint concludes with a demand for judgment for commissions aggregating $3,617.79.

It is conceded by the defendant that the plaintiff is entitled to commissions on the sales made by the Polson Implement Company and that the plaintiff is entitled to a commission of 12½ per cent on sales made in January and February of 1914; but the defendant contends that on all the remaining sales made by the Polson Implement Company the plaintiff is only entitled to a 10 per cent commission. As already stated the answer denies that any sales were made to Wallowa County and there is also a denial of two of the three sales which the plaintiff claims were made to Yamhill County. Besides the denials this pleading contains three further and separate answers and defenses of which the first is purely defensive while the second and third are counterclaims. The first further and sepa-

rate answer contains the following comprehensive averment:

"The plaintiff failed to comply with the terms of said contract and grossly neglected and willfully failed to work the trade in a first-class, good or business-like manner, and grossly failed and willfully neglected to have a sufficient number of good or competent salesmen or men who were reasonably well informed in culverts to work the trade thoroughly or otherwise, or to call on the users of culverts regularly or often or at all, and grossly failed and neglected to keep the trade properly or thoroughly circularized with printed matter, as agreed in said contract, or otherwise, and plaintiff neglected and failed to perform any of the agreements to be kept and performed by it under said contract, and particularly failed to keep the agreements set forth in Section Two of said contract, but on the contrary, in violation of the terms of said contract, plaintiff engaged salesmen who were not good salesmen and who were not well or otherwise informed in the sale of culverts, especially culverts made of American Ingot Iron, and that said salesmen so employed by plaintiff worked the trade in a careless and unbusinesslike manner and said salesmen did not call on the users of culvert in the territory for which it had said selling agency, regularly or often, but neglected the sale of said culverts and thereby permitted the defendant's business to become neglected and impaired, and the plaintiff particularly willfully failed and grossly neglected to work the trade for the sale of culverts in and with the counties of Crook, Malheur, Gilliam, and Yamhill, in the State of Oregon."

The remainder of this further and separate defense deals with the admitted sales; and the defendant's version of each of these sales is given in a separate paragraph. The defendant's story of one of the sales to Crook County illustrates the other paragraphs which deal with the other admitted sales. The Coast Culvert & Flume Company alleges:

"That during the summer of 1914, Crook County, in the State of Oregon, was desirous of purchasing a large quantity of culvert amounting to over $3,000, of which fact plaintiff was well advised, and that at said time plaintiff negligently failed to work the trade for the sale of culvert in and with said Crook County either in a first-class or business-like manner, and negligently failed to have a good or competent salesman to solicit the trade of said county for the purchase of said culvert, and at said time plaintiff failed to sell to said county any culvert, although said county was desirous of purchasing a large amount of culvert, and of the culvert manufactured by the defendants herein, and for the sale of which plaintiff had the agency under said contract; that after the plaintiff had failed and neglected to secure the trade of said Crook County, and had failed and neglected to sell to said county said large amount or any culvert manufactured by the defendant, the defendant herein, about the eighteenth day of August, 1914, by the exercise of reasonable business salesmanship, sold to said Crook County a quantity of culvert made by the defendant of said American Ingot Iron, amounting to $3,428.00, upon the same terms and conditions upon which the plaintiff was authorized to sell the same, and that said sale was so made by the defendant when and after the plaintiff was unable to make a sale to said Crook County; that said sale is the same transaction of which the plaintiff complains in paragraph III of its second cause of action in its Amended Complaint."

The counterclaim pleaded in the second further and separate answer embraces three items: one relating to Yamhill County, one to Malheur and the third to Harney County. The defendant alleges that the county judge and the county commissioners of Yamhill County visited Portland for the purpose of purchasing culverts manufactured by defendant, but that on account of the plaintiff's failure to have a competent salesman to wait upon the representatives of the county and on

account of the neglect of the plaintiff to use ordinary business salesmanship in soliciting the purchasers of culverts, Yamhill County failed to purchase any culverts manufactured by defendant, but purchased culverts from a competitor; and that by reason of the failure of the plaintiff to make this sale to Yamhill County the defendant lost profits and was damaged in the sum of $500.

The defendant further avers that negotiations for a new contract were carried on between the parties from July 1, 1915, until September 12, 1915, and that during the pendency of these negotiations the plaintiff continued to act as the selling agent of the defendant "pursuant to the terms" of exhibit "B." The defendant says that in August, 1915, Malheur County, through its proper officers, gave the plaintiff an order for culverts amounting to $2,153, and that in August, 1915, Harney County, through its proper officers, gave the plaintiff an order for culverts amounting to $2,153; that both orders contemplated the delivery of culverts manufactured by the defendant; that plaintiff filled both orders by delivering "culvert other than that manufactured by defendant" to the damage of the defendant in the sum of $1,059.56, the amount of the profits which defendant would have made.

The third further and separate answer, being the second counterclaim, proceeds upon the theory that on June 14, 1914, the defendant sold culverts, valued at $3,978.80, to Crook County and that the auditing department of the defendant acting under the alleged erroneous belief that exhibit "A" "was at said time in effect" paid $994.70 to the plaintiff as a commission; and that therefore the defendant is entitled to a return of the sum of $994.70.

The plaintiff denied that it had failed to comply with the provisions of exhibits "A". and "B," and also denied the allegations relating to the counterclaims. A trial by a jury resulted in a verdict for the plaintiff for $2,396.17.                              AFFIRMED.

For appellant there was a brief over the name of *Messrs. Winter, Wilson & Johnson,* with an oral argument by *Mr. John P. Winter.*

For respondent there was a brief and an oral argument by *Mr. John H. Hall.*

HARRIS, J.—Although there is a dispute as to the amount of the commissions due on account of sales made by the Polson Implement Company yet it is admitted by the defendant that the plaintiff is entitled to some commission on those sales; and hence the sales made by the Polson Implement Company will be eliminated from the discussion and we shall confine our attention to the sales made to the several counties enumerated in the pleadings.   The sale to Grant County was made at a time when exhibit "A" was in force.   The remaining sales specified in the complaint were made during the life of exhibit "B."   The first cause of action pleaded by the plaintiff includes the sale to Grant County; and the second cause of action embraces sales to the counties of Crook, Malheur, Gilliam, Yamhill, Wallowa and Wahkiakum.

The arguments advanced by the defendant in a very able and closely reasoned brief may be reduced to two contentions: (1) that exhibit "B" "does not grant anything more than a limited exclusive right to sell"; and (2) that the defendant is not in any event liable for commissions on sales made by it unless the plaintiff pleads and proves performance of its agreement.

It is conceded by the defendant that exhibit "A" provides that a commission shall be paid to the plaintiff upon every sale of culverts whether made through the plaintiff or directly by the defendant. The plaintiff insists that exhibit "B" is like exhibit "A" and that it, too, provides, with certain enumerated exceptions, for the payment of commissions on sales made by the defendant itself. Contracts involving the element of exclusive agency may fall in any one of three classes: (1) Where the contract does not prevent the principal from making direct sales although it does deprive him of the right to appoint another agent; (2) where the agent is not only made the exclusive agent but is also given the exclusive right to sell; and (3) where the exclusive agency is accompanied with the stipulated right to commissions on all sales whether made indirectly through the agent or directly by the principal. The defendant contends that exhibit "B" belongs to the second rather than to the third class of cases and that therefore the plaintiff can only recover by showing that it would have made the sales if the defendant had not interfered.

1. It will be necessary to examine exhibit "B" to ascertain whether it grants the right claimed by the plaintiff. Exhibit "B" does more than merely to create an exclusive agency. While not conceding that the contract gives the plaintiff an exclusive right to sell plus the right to commissions on all sales, the defendant itself does admit that the plaintiff is given a limited exclusive right to sell. The first paragraph gives to Hodson-Feenaughty Company the exclusive selling agency in a specified territory with the reservation that the Coast Culvert & Flume Company shall have "the right to solicit and sell in conjunction with" the plaintiff, counties noted in paragraph No. 10, cities,

towns, new railroads and irrigation projects. This paragraph recognizes that the plaintiff has some sort of an exclusive right to solicit and sell and that the right of the defendant to solicit and sell is limited to the enumerated exceptions. Other paragraphs emphasize the idea expressed in the first. The third paragraph requires the plaintiff to advise the defendant of prospective customers so that "we may assist you in keeping the goods before them"; paragraph 4 provides against the danger of loss of business to a competitor and yet it will be noticed that this paragraph contemplates that the plaintiff shall first express a desire that the defendant send a special salesman. Paragraph 10 specifies the persons whom the defendant can solicit as its "own prospects"; and in paragraph 12 the defendant says to the plaintiff: "We will render you all reasonable friendly assistance in helping you make sales." Thus it is seen that the contract gives to the plaintiff the exclusive right to sell and then limitations are placed upon that right by specifying certain exceptions. Finding a contract which confers an exclusive right to sell, subject though it is to defined exceptions, we would naturally expect to find some provision in the contract protecting that right. Before again looking at exhibit "B" we may with propriety remind ourselves that for two years the two corporations acted under exhibit "A" which the defendant concedes made it liable for commissions not only for sales effected through the plaintiff but also for sales made by the defendant. The managing officers of Hodson-Feenaughty Company operated under exhibit "A" from January 19, 1914, to July 1, 1914, and hence they were not strangers to the terms of exhibit "A." Turning again to exhibit "B" we read in the eighth paragraph that the

defendant agrees to send to the plaintiff duplicate invoices "covering all sales made within your territory on which commissions would be due you, *including orders received direct by us,* except as provided in paragraphs 1 and 10 thereof." Paragraph 1 excepts from the contract cities, towns, new railroads and irrigation projects and counties "noted in paragraph No. 10." The language of the tenth paragraph is alone significant and especially so when considered in connection with the eighth paragraph. In the tenth paragraph the defendant in effect says to the plaintiff:

"If you lose the trade of an established customer to whom you have the exclusive right to sell or if you are unable to close a sale to a person to whom you are granted the exclusive right to sell then your right ceases to be exclusive and we have the privilege of soliciting such customers *without being liable to you for commissions on such sales as we make to them.*"

The italicized words standing alone carry with them an admission that without them the defendant would be liable for commissions even where the sales were made by the defendant after an established customer is lost to a competitor or after the plaintiff is unable to close a sale. The fourth paragraph gives additional support to the contention of the plaintiff, for we there read:

"Should our salesmen originate culvert orders from any of your customers when your salesmen are not on the ground, we are to have one-half of *your regular commission* of such sales."

2. This is one way of saying that in the absence of this provision an order originated by the defendant would result in a liability for all "your regular commission." As we construe exhibit "B" it expressly provides that the defendant shall be liable, with certain exceptions, for commissions on sales whether

effected through the plaintiff or brought about by the
defendant.   Moreover, by their own conduct the par-
ties themselves placed this construction upon the con-
tract.   J. T. Pasqual, the bookkeeper for the Coast
Culvert & Flume Company, testified that at some time
between January 19, 1914, the date when Hodson,
Feenaughty and Thompson purchased the stock in
Beall & Company, and February 4, 1914, John S. Beall
"asked me to hold up the sales which came in direct
to the factory in order to find-out whether or not
Hodson-Feenaughty Company were working the trade
in a business-like manner."

Pursuant to this order Pasqual did "hold up," ex-
clusive of the sales in controversy, 108 sales "that
came direct to the" defendant between February 4,
1914, and June 29, 1915.   Twenty-three of these sales
were made while exhibit "A" was in force and the
remaining 85 sales were made during the life of ex-
hibit "B."   When in October, 1915, the plaintiff learned
of these 108 sales it claimed and the defendant paid
commissions on them.

3, 4. The second contention of the defendant is
based upon the ground that before it can recover on
its first cause of action the plaintiff must allege and
prove that it fulfilled the promises made by it in
exhibit "A"; and that the plaintiff must also allege and
prove that it kept its agreements set forth in exhibit
"B" before commissions can be allowed on sales made
to any of the counties specified in the second cause
of action.   In this connection it is to be noted that
the reply denies that part of the answer which avers
that plaintiff did not perform its agreements and the
reply also denies the allegations of the defendant con-
cerning the asserted failure of the plaintiff properly
to work the several specified counties; and, therefore,

any defect in the complaint is cured by the answer and reply: *Catlin* v. *Jones,* 48 Or. 158, 163 (85 Pac. 515).

The defendant argues that exhibit "B" contains mutual and dependent covenants; that the promise of the defendant to pay commissions depends upon performance by the plaintiff of all its covenants; and that therefore a substantial performance of the plaintiff's covenants must be shown as a condition precedent before the defendant becomes liable for any commissions. The defendant insists that paragraph two states the consideration to be furnished by the plaintiff and that this consideration is entire; and that therefore, since exhibit "B" applies to Oregon, Idaho and "such parts of Washington as we (the defendant) supply," the plaintiff must show that it has substantially performed its agreements throughout the whole territory before it can recover a commission on a sale made directly by the defendant in any part of that territory. The defendant tersely states its position in its brief as follows:

"In the case at bar, plaintiff cannot claim an exclusive right anywhere within the territory without showing that it substantially performed its agreements everywhere within the territory."

The defendant argues, for example, that if the plaintiff failed "to work the trade," as required by paragraph 2 of exhibit "B," in Douglas County, it could not assert an exclusive right in Crook County and therefore would not be entitled to commissions on sales made by the defendant in Crook County. The word "counties" found in the first paragraph of exhibit "B" is used in the sense of a customer. The counties of Oregon, Idaho and Washington constituted a considerable portion, if not the largest part, of "the trade." A very considerable portion of the culvert

business was done with counties and consequently it is fair to assume that the parties had this fact in mind when they wrote and signed exhibit "B." As stated in *Burkhart* v. *Hart,* 36 Or. 586, 589 (60 Pac. 205, 206):

"It is often extremely difficult to determine whether the covenants of the respective parties to a contract are dependent or independent, and there is much conflict in the authorities upon the question; but, as already said, each case depends upon its own facts and the justice and good sense of the matter."

The plaintiff contends that exhibit "A" as well as exhibit "B" is a divisible contract and that therefore whenever a sale was made and the price paid, the plaintiff became entitled to its commission on that sale. Here, too, it is difficult to lay down a rule applicable to all cases, and hence each case must largely depend upon the terms found in the contract; but after all the question of whether a contract is entire or severable is one of intention and the intent of the parties is to be determined by the language used by them and the subject matter of the agreement: 13 C. J. 562. It must be remembered that the defendant did not rescind or attempt to rescind either contract. Indeed, the defendant contends that exhibit "B" was kept in force until September 12, 1915. The parties acted under exhibit "A" until July 1, 1914, and both litigants admit that they acted under exhibit "B" from July 1, 1914, until July 1, 1915. Taking exhibit "B" by its four corners and reading it in the light of the surrounding circumstances it is our view that the parties intended that the plaintiff should be entitled to a commission for a sale made to Crook County even though the plaintiff failed "to work the trade" in Douglas County. A commission is paid on each separate sale and the amount of the commission is regulated by the

amount of such sale. Moreover, the parties have themselves expressly provided for the penalty to be suffered by the plaintiff, for it is said in paragraph 10 that in the event the plaintiff loses the trade of an established-customer, or is unable to close a sale, then the defendant has the privilege of soliciting such "customers" without being liable to the plaintiff for commissions on sales made to such "customers." It makes no difference whether the loss of an established customer or the failure to close a sale was caused by the neglect of the plaintiff to "work the trade in a first-class business-like manner" or resulted from inability of the plaintiff to secure the business after having worked the trade, for in either event the defendant was entitled to make a sale, if it could, without being liable for a commission.

We have carefully examined the evidence found in the record and we are satisfied that the judgment appealed from "was such as should have been rendered in the case." We do not find any error in the case which would warrant us in reversing the cause and remanding it for a new trial; and therefore the judgment appealed from is affirmed.    AFFIRMED.

McBRIDE, C. J., and BURNETT and BENSON, JJ., concur.

---

Rehearing denied April 1, 1919.

## ON PETITION FOR REHEARING.

(179 Pac. 560.)

In Banc.

HARRIS, J.—5, 6. On September 3, 1915, the Hodson-Feenaughty Company obtained an order from

Malheur County for a carload of culverts; and on September 9, 1915, the company secured an order from Harney County for a carload of culverts. These orders were not turned over to the Coast Culvert & Flume Company. The defendant tells about these two orders in its second further and separate answer and by way of counterclaim seeks to recover from the plaintiff the profits which the defendant avers it would have made if the orders had been delivered to it to be filled. The theory of the defendant was that the parties were acting pursuant to exhibit "B" from July 1, 1915, to September 12, 1915. The plaintiff contended that exhibit "B" terminated with the end of June 30, 1915, and that therefore it did not apply to any orders for culverts secured by the plaintiff after June 30, 1915.

The defendant requested the court to give the following instruction to the jury:

"If you find from the evidence that the plaintiff did take an order in Harney County and sold culvert to Harney County for the defendant, and never notified defendant thereof, then defendant is entitled to the profits lost to it thereby and plaintiff is not entitled to any credit for commission thereon. This same instruction applies to the Malheur County claim of similar nature, and in this connection, I further instruct you that exhibit "L" of plaintiff and exhibit 2 of defendant, respectively are in writing, and show upon their face that sales of Armco iron were made by the plaintiff to the respective counties of Malheur and Harney."

The court refused to charge the jury as requested by the defendant. The following instruction was however given to the jury:

"Defendant has filed a counterclaim in this case, and as to this counterclaim, it is essential that the defendant establish the same by a preponderance of

proof before there can be any judgment in its favor against the plaintiff thereon. If you find from the evidence that on September 3d and 9th, respectively, 1915, plaintiff was the agent for the defendant for the sale of culverts manufactured by the defendant, and while plaintiff was such agent, it received orders for the culvert manufactured by the defendant, but did not turn those orders over to the defendant, but filled the same with culvert of different class and character and did not give the defendant an opportunity to fill said orders, then I instruct you that the defendant is entitled to charge the plaintiff with all the profits which the defendant lost by reason of the plaintiff's failure to turn over the said order or orders so secured. The only thing about that is, that instruction refers to orders received by Hodson-Feenaughty for Armco iron. If they received orders simply for culvert, why this instruction does not apply. This instruction applies to orders received for Armco culvert. If they were agents of the flume company and received any orders for Armco Iron Culvert, they must have turned them over, or pay the lost profit."

The defendant argues that, since an agent is not entitled to a commission when he acts in bad faith or fraudulently, the requested instruction, which announces that rule, should have been given to the jury; and that the instruction which the court did give permitted the jury to allow the plaintiff a commission on the orders which Harney and Malheur Counties gave "even if the jury had been satisfied that the plaintiff was guilty of concealment and fraud." The plaintiff did not claim any commission on account of these two orders. Nothing occurred at any time during the trial which could have led the jury to understand that the plaintiff could be allowed commissions for the orders which had been secured from Malheur and Harney counties in September, 1915. The only question arising out of these two orders was whether

or not the defendant was entitled to damages. The instructions of the court were plain and understandable and, as we read the record, it is not at all likely that any one of the jurors misunderstood the instructions of the court concerning these two orders for culverts.

Moreover, exhibit "B" expired with the end of June 30, 1915. By its express terms exhibit "B" was effective "for a period of one year from July 1, 1914." On June 30, 1915, the defendant addressed and sent a letter to the plaintiff which, so far as material here, reads as follows:

"Referring to your selling contract with us which expires today, will say that under the present unsettled metal conditions, we are not in position to renew it at this time. A little later when conditions get settled so we can have something more definite to work on than we have now, we will take the matter up with you again for further consideration, but in the meantime, we will try and fill all orders that you send us at our regular list prices on our 1914 B price list, where the credit risk and other conditions are satisfactory to us, allowing you 12½% commission on all such accepted sales.

"This arrangement, however, is subject to change at any time by us."

The letter states that "we are not in a position to renew" exhibit "B" "at this time." The most that the defendant expresses is a willingness to "try" to fill any orders that the plaintiff may send. There was no agreement expressed or implied that the plaintiff would or should send its orders for culverts to the defendant to be filled. If any orders secured by the plaintiff were in fact turned over to and filled by the defendant after June 30, 1915, then, of course, the letter governed the rights of the parties. No substantial right of the defendant was prejudiced

by the instruction which the court gave or by the refusal of the court to give the instruction which was requested by the defendant.

The petition for a rehearing is denied.

AFFIRMED. REHEARING DENIED.

