Argued at Pendleton May 4, affirmed June 29, 1927.

# MYRTLE WOOD ET AL. *v.* S. V. DAVIN ET AL.

(257 Pac. 690.)

**Contracts—Court Should not Interfere With Practical Construction Placed on Contract by Parties Who Acted upon It for More Than Twenty Years.**

1. Court should not interfere with practical construction placed upon contract by parties who well understood their own contract and acted upon it for more than twenty years.

**Payment—Money Vendors Owed Vendees in 1892 Under Land Contract was Presumed to have Been Paid Because of Lapse of Time.**

2. Money, which vendors owed vendees, if any, under contract for sale of land in 1892, was presumed to have been paid; presumption applying from lapse of time.

**Equity—One Appealing to Equity Appeals to Justice of Chancellor.**

3. Suitor who appeals to equity appeals to justice of chancellor.

**Equity—Equity Aids Vigilant, not Those Who Slumber on Their Rights.**

4. Equity aids the vigilant, not those who slumber on their rights.

**Vendor and Purchaser—Under Land Contract to Convey Certain Land and to Relinquish Rights in Other Land to Which Vendors' Title was Incomplete, Lien Attached Only to Lands Contractors were Empowered to Convey.**

5. Under land contract, whereby vendors agreed to convey certain land and to relinquish their rights in certain lands to which their title was incomplete, lien attached only to lands that contractors were empowered to convey.

---

Contracts, 13 **C. J.**, p. 546, n. 54, p. 548, n. 55.
Equity, 21 **C. J.**, p. 193, n. 6, p. 211, n. 41, p. 212, n. 48, p. 227, n. 56, p. 231, n. 84.
Payment, 30 **Cyc.**, p. 1273, n. 11, p. 1275, n. 22.
Vendor and Purchaser, 39 **Cyc.**, p. 1309, n. 67.

From Wallowa: J. W. KNOWLES, Judge.

In Banc.

This is a suit by the successor in interest of the vendors, to foreclose a contract made by them for

---

2. Presumption of payment from lapse of time, see note in 1 A. L. R. 779. See, also, 21 R. C. L. 127.
4. See 10 R. C. L. 388.

the sale of real property situate in Wallowa County, Oregon, upon which partial payments of the purchase price have been made. From a decree for plaintiff in the sum of $10,000, with interest thereon at seven per cent per annum from August 1, 1921, together with costs and disbursements, and declaring the judgment to be a first and prior lien upon the real property described therein, the defendant appeals.                      AFFIRMED.

For appellants there was a brief over the names of *Mr. Daniel Boyd, Mr. Charles A. Hart* and *Messrs. Carey & Kerr,* with oral arguments by *Mr. Boyd* and *Mr. Hart.*

For respondent there was a brief over the names of *Messrs. Clark, Skulason & Clark,* with an oral argument by *Mr. A. E. Clark.*

BROWN, J.—On July 2, 1902, at Walla Walla, Washington, J. A. Wood, unmarried, and his mother, Clarissa T. Wood, a widow, as vendors, entered into a contract with S. V. Davin and Xavier Michellod, as vendees, whereby they agreed to sell and convey to the vendees, for the purchase price of $28,000, a certain ranch comprising about 2,800 acres of land, known as the "O. L. Stock Ranch," and situate on Lightning Creek and Little Sheep Creek, in Wallowa County, Oregon. The contract further provided:

"Whereas, the title to a portion of said lands is at this date incomplete in the said parties of the first part, and it is agreed by and between the said parties hereto that the said parties of the first part shall make unto the said parties of the second part a contract for a deed of warranty, to be made at a

time and in the manner to be specified in said contract of sale of said ranch, * *

"The said parties of the first part * * do hereby contract, promise and agree * * to obligate and bind themselves * * to convey * * unto the said parties of the second part * * the fee simple title to all said lands, except certain pieces and parcels thereof, to which the title · of the United States has not yet been extinguished, and as to such pieces to relinquish to the United States the right and title of present occupants thereto, and to convey all the right, title and interest of the parties of the first part therein to the said parties of the second part."

On July 25, 1902, the parties made a second contract for a deed in accordance with the previous contract, whereby the land sought to be conveyed is particularly described. Then appears the following:

"Also 640 acres of land, according to government survey, to which the title of the parties of the first part is at the date of this agreement incomplete, and their right thereto imperfect."

Concurrently with the execution of the second contract, the balance of a first payment of $10,000 upon the purchase price was made, and the vendees agreed to pay the remainder of the purchase price, i. e., $18,000, within six years, with interest at 7 per cent per annum on all sums remaining due until paid. Some time later, and about July 25, 1908, the vendees were credited with a payment of $8,000 on the principal sum, leaving a balance due of $10,000.

The interests of the several individuals named as defendants have become merged in the corporation defendant, the Davin-Michellod Sheep and Land Company. The corporation denies that there re-

mains due and unpaid the sum of $10,000. It asserts a failure of performance by the vendors as to three certain tracts claimed to be covered by the contract, and demands that the contract price be reduced accordingly. The trial court held that, if the defendants ever had a legitimate claim for the diminution of the purchase price by reason of the shortage of land, or for money due in perfecting title thereto, such claim had become stale on account of the great lapse of time and the changed condition of the parties to the contract; and, based upon this conclusion, the court directed findings for the plaintiff, upon which the decree hereinbefore referred to was entered.

With the passing of a month, the contract forming the basis of this suit will have attained the age of a quarter of a century. The record discloses that it was made nearly twenty-five years ago. For more than twenty years, it received a harmonious common construction by the parties thereto. However, when death sealed the lips of Mr. Wood, a question as to the sum due upon the purchase price was raised for the first time. The vendor, Clarissa T. Wood, made her home with her son, J. A. Wood, at Walla Walla, where she died May 12, 1914. From 1902 until 1917, J. A. Wood, the other vendor, made his home at Walla Walla, then removed to Independence, Polk County, Oregon, where he died September 27, 1922. H. S. Blandford, the attorney who prepared and witnessed the contracts dated July 2 and July 25, 1902, respectively, is dead. J. D. Lamb, the real estate dealer of Walla Walla, who negotiated the transactions between the vendors and vendees and witnessed the contract, is also dead. During the

twenty years that J. A. Wood lived after the execution of the contract, there was no dispute or misunderstanding concerning the sums due as principal or interest upon the purchase price of the land; and though, during all of this time, one of the vendees lived at Walla Walla, and often met the vendors, not until Wood had died and his widow, as legal representative, sought to collect the interest due, was any question raised concerning the performance of the contract. After the sum due had been reduced to $10,000, Wood had granted two extensions of time for the payment of the balance, and upon each occasion the vendees agreed to pay the balance due upon the contract, and promptly paid $700 as annual interest on the balance of $10,-000. Moreover, in all the payments of interest upon the principal sum, the balance remaining unpaid and due the vendors was treated by all parties as the sum of $10,000.

In *City Messenger Co.* v. *Telegraph Co.*, 74 Or. 433 (145 Pac. 657), this court said:

"There is no more certain way of finding out what the contracting parties meant than to ascertain what they have actually done in carrying out the contract. By so doing we learn what construction the parties themselves have placed upon the terms of their stipulation."

To like effect, see *Harlow* v. *Oregonian Pub. Co.*, 53 Or. 272 (100 Pac. 7); *Hodson-Feenaughty Co.* v. *Coast Culvert & Flume Co.*, 91 Or. 630 (178 Pac. 382, 179 Pac. 560); *Jaloff* v. *United Auto Indemnity Exch.*, 120 Or. 381 (250 Pac. 717), and the authorities therein cited.

1. This court should not interfere with the practical construction placed upon their contract by these

people, who well understood their own contract and acted upon it for more than twenty years. The only signer of the original contract who testified was defendant Michellod. He testified that the interest was paid to the First National Bank at Walla Walla. From his testimony we quote:

"Q. And in 1908, when the contract called for the payment of the balance of the purchase price of $18,000, did you get an extension? A. We got an extension for the $10,000.

"Q. For $10,000? A. Yes, sir.

"Q. It was agreed at that time that that was the balance due? A. The balance due.

"Q. That was, we will say, in 1908 or 1909? A. Well, I think it was in 1908, that is when he extended the contract. * *

"Q. And do you remember for how long a period that extension was, that first extension? A. I don't remember; for five or ten years; I couldn't say. * *

"Q. Well, anyway, you did get an extension agreement about the time the whole principal became due? A. Now, when Mr. Wood give that extension he give that to Mr. Davin because he was in Walla Walla and I was in Wallowa.

"Q. You mean the first extension or the second? A. The first and second, both. * *

"Q. In behalf of the partnership in the first instance and the corporation in the second instance? A. Yes, sir."

For some reason best known to the defendants, Mr. Davin, their codefendant, was not placed upon the witness-stand.

2. Defendant Michellod testified that, "When we signed the contract up at Blandford's office," vendor Wood said to him, in reference to the land embraced in the contract, that he could not deed it all, and that "he would pay us back $10 an acre and interest for it." If Wood made any such state-

ment, we assume from the record that he kept his promise. At the time of the execution of the contracts, all parties knew that the vendors could not convey the three tracts mentioned in the defendants' answer. They agreed to relinquish all claims thereto, not to convey title. If the vendors owed the vendees in 1892, as testified by Michellod, under the rules of evidence it is presumed that payment has been made. This presumption applies from lapse of time. The general rule of presumption of payment from lapse of time is the subject of an instructive note in 1 A. L. R., p. 779. The annotators say, at page 781:

"The doctrine that, in the absence of rebutting circumstances, debts will be presumed paid after 20 years from the time they were due, is too well settled to require authority to support it."

Then follow a wealth of authorities.

See, also, *Beekman* v. *Hamlin*, 19 Or. 383 (24 Pac. 195, 20 Am. St. Rep. 827, 10 L. R. A. 454); 21 R. C. L., Payment, § 141.

In discussing the origin and application of the foregoing rule, it is said in 21 R. C. L., Payment, at Section 144:

"It originated in equity in the application of the maxim '*vigilantibus et non dormientibus jura subveniunt*,' but was soon engrafted in the common law, and has since been steadily applied."

In the case at bar, however, the injury worked to the plaintiff was not by reason of the delay alone, but because the delay worked to the disadvantage of the plaintiff. For this reason, the learned trial judge applied the equitable doctrine of laches.

3, 4. The suitor who appeals to equity appeals to the justice of the chancellor. Equity aids the

vigilant, not those who slumber on their rights: 1
Pomeroy's Equity Jurisprudence (4 ed.), § 418. In
its application and effect, we quote from the suc-
ceeding section of Pomeroy:

"A court of equity, which is never active in relief
against conscience or public convenience, has always
refused its aid to stale demands, where the party
has slept on his rights and acquiesced for a great
length of time. Nothing can call forth the court
into activity but conscience, good faith and reason-
able diligence."

In the case of *Hammond* v. *Hopkins*, 143 U. S.
233 (36 L. Ed. 134, 12 Sup. Ct. Rep. 427), are facts
similar to the facts in the case at bar, and for this
reason that case constitutes a valuable and instruc-
tive precedent. From the opinion therein rendered
by the court, speaking through Mr. Chief Justice
FULLER, we quote the following:

"No rule of law is better settled than that a
court of equity will not aid a party whose applica-
tion is destitute of conscience, good faith and rea-
sonable diligence, but will discourage stale demands
for the peace of society by refusing to interfere
where there has been gross laches in prosecuting
rights, or where long acquiescence in the assertion
of adverse rights has occurred. The rule is par-
ticularly applicable where the difficulty of doing
entire justice arises through the death of the prin-
cipal participants in the transaction complained
of, or of the witness or witnesses, or by reason of
the original transaction's having become so obscured
by time as to render the ascertainment of the exact
facts impossible."

See *Wilson* v. *Wilson*, 41 Or. 459 (69 Pac. 923);
*Crow* v. *Crow*, 70 Or. 534 (139 Pac. 854).

In the case of *Scott* v. *Merrill's Estate*, 74 Or.
568 (146 Pac. 99), this court said:

"Claims of long standing, when filed against an estate of a decedent, should be scrutinized with care; and in such cases strong and convincing proof should . be required before allowing the same."

Pomeroy thus states a rule of equity jurisprudence that has been invoked by defendants:

"A party in possession of land who resorts to a court of equity to settle a question of title is not chargeable with laches, no matter how long his delay." 4 Pomeroy's Equity Jurisprudence (4 ed.), § 1454.

5. Wherever applicable, that rule governs. However, the quoted rule has no application to the lien upon the real property herein contracted to be conveyed, for the reason that no question of title is involved. We hold that the lien attaches to the lands that the contractors were empowered to convey, and not to land title to which was in the government at the time the contract was made. Title to the tracts of land known in the record as the Coleman, Weaver and Clarissa Wood tracts respectively, consisting of 237.51 acres, was in the government at the time the contract involved herein was entered into, and these tracts are not subject to any lien, nor are they embodied in the description of the lands contracted to be conveyed. Further, this is not a case where the purchaser entered into a contract in ignorance of the vendor's right to convey. From the evidence adduced in the lower court, the vendors contracted to convey a considerable number of tracts of land constituting the main body of the ranch, and to relinquish all claim of right to that which they were unable to convey. The vendors complied with this agreement. The vendees or their assignees, after the execution of the contracts, did acquire title to the tracts that

the vendors were unable to convey. The vendors
never agreed to convey to the vendees lands title
to which was in the government. As we have here-
inbefore stated, they performed their obligation
with reference to such lands when they relinquished
all rights thereto.

This case has been discussed, however, upon the
theory that the vendors intended to convey all their
rights to the tracts of land known in the contract
as the Weaver, Coleman and Clarissa Wood tracts.
Apparently the bars have been let down for the
purpose of explaining the defendants' understand-
ing of the contract sued upon. If oral testimony
is competent to prove what Wood said to the ven-
dees in reference to what lands were conveyed by
the contract, then the excerpt hereinbefore quoted
from the first, or the original, contract is likewise
competent. But, relying upon the written contract
alone as the basis of this suit, we can find no rea-
son for the inclusion of these three tracts of land.
In the contract known as Exhibit ''B,'' the Weaver
tract is described as lot 12, section 6, township 1
south, range 47 east of the Willamette Meridian,
and the Coleman tract as lot 8, section 1, township
1 south, range 46 east of the Willamette Meridian.
These descriptions were accurate. However, when
the writing was executed, the parties thereto elimi-
nated both tracts by having the descriptions thereof
crossed out on the typewriter with the letter ''x.''
Had the vendors intended to convey these tracts
of land, the description thereof would not have
been stricken from the writing. The Clarissa
Wood tract was never described in Exhibit ''B.''
Finally, the pleadings of all parties hereto admit
the execution of that writing.

We are of opinion that the plaintiff is entitled to judgment and decree against the defendants for $10,000, with interest thereon at the rate of 7 per cent per annum from August 1, 1921, and for the relief prayed for in her complaint in accordance with this opinion.

This case is affirmed.                          AFFIRMED.