Argued December 15, 1943; affirmed January 4, 1944

In re Scramlin's Estate
# SCRAMLIN v. ZIMMERMAN
(144 P. (2d) 324)

Before Bailey, Chief Justice, and Belt, Rossman, Brand and Hay, Associate Justices.

*Philip Hammond* and *Glenn R. Jack,* both of Oregon City, for appellant.

*William Hammond,* of Oregon City, for respondent.

BELT, J.   This is a proceeding in the nature of specific performance, purporting to have been brought under and by virtue of §§ 19-313 and 19-314, O. C. L. A., to compel the executor of the estate of George W. Scramlin, deceased, to execute a deed to the petitioner.

R. C. Scramlin, who alleges that he has fully performed his part of a contract to purchase certain land which his father agreed to sell to him. The circuit court for Clackamas county, probate department, found that the balance due upon the purchase price had not been paid and refused to direct the executor to execute the deed. From such decree the petitioner appeals.

Both parties in the lower court assumed that the sections of the statute above cited authorized such proceeding and that it was not necessary to bring an independent suit in equity for specific performance. In view of the record, we will, without deciding the procedural question, assume that petitioner has sought an appropriate remedy under the statute. The case, therefore, will be determined on its merits.

On March 30, 1932, George W. Scramlin, then 78 years of age, entered into a written contract to sell to his son, Russell C. Scramlin, 124 acres of land in Clackamas county, for a consideration of $12,000. The contract recites that the sum of $3,000 was paid upon execution of the contract, the balance of the purchase price to be paid not later than ten years from date of the contract. It was further provided that, "There shall be further credited on the purchase price any other sums due the purchaser from the owner." The trial court held that Russell, the son, had paid only $4,077.78 and that he was not entitled to a deed until the balance of $7,922.22 due on the purchase price was paid.

George W. Scramlin died on February 4, 1942, when 88 years of age. On July 17, 1942, Russell filed his petition, to which was attached a statement of account setting forth over 250 alleged items of credit. On September 16, 1942, a supplemental petition was filed,

based upon 20 cancelled checks, aggregating $1,077.78, drawn between 1925 and 1930 by Russell in favor of his father. The record is silent as to what these checks represented, but the court allowed petitioner credit in full for them and, since there is no cross appeal, we will pass this phase of the case without further comment.

The brief of appellant consists of seven pages, whereas the statement of account occupies 28 printed pages of the abstract of record. No attempt is made by appellant to analyze the account. No argument is set forth in the brief of appellants to sustain the account. A voluminous, indefinite, and complicated record is thrown into the lap of this court as if to say, "Well, see what you can make out of it." In response to this request, we have struggled through the entire record seeking to solve the mystery of the account and must confess our inability to do so. The human understanding has its limitations.

If all the items of credit were allowed, petitioner would have been entitled to a deed from his father long before the latter's death. Yet no demand was made for a deed. Neither was any attempt ever made by petitioner to have an accounting with his father. Petitioner said he made the original payment of $3,000 in cash. Where did he get the money? The record is silent. The father, at the time of the execution of the contract, was heavily indebted. The transaction from its inception is clouded with doubt and suspicion.

Petitioner, among other things, claims credit in the sum of $5,506.21 for milk and cream sold and delivered to Mt. Angel Creamery Company during a period of ten years. The checks, however, were made in favor of George W. Scramlin and the account was carried in

his name. Russell claims that his father agreed to credit the amount of the monthly checks on the contract of purchase. Since the original contract is not here, we have no means of knowing whether such credits were made or not. It would seem that, if a bona fide sale of the farm had been made to Russell, the cream account would have been carried in his name and the checks drawn in his favor.

■■ The law applicable to claims against a decedent's estate is well established. He who asserts a claim has the burden of establishing it with clear and convincing evidence. It is the policy of the law, in view of the fact that the lips of an alleged promisor are sealed in death and of the frequent attempts of unscrupulous persons to palm off fictitious claims against an estate, to require proof of a convincing character: *In re Estate of Fisher,* 128 Or. 415, 274 P. 1098; *In re Estate of Griffith,* 119 Or. 87, 248 P. 156; *Branch v. Lambert,* 103 Or. 423, 205 P. 995. The evidence in this case is so vague and uncertain—and, in many instances, so unreasonable—that we have no reluctance in saying that petitioner has failed to sustain the burden of proof imposed upon him by law.

The decree of the circuit court is affirmed. Respondent is entitled to costs and disbursements.