Argued January 25, affirmed February 9, 1915.

# SCOTT *v.* MERRILL'S ESTATE.

# BROWN *v.* MERRILL'S ESTATE.

(146 Pac. 99.)

**Brokers—Contract of Employment—Performance of Commission—Right to Compensation.**

1. A broker employed to sell real property for decedent obtained a contract by which the customer paid a thousand dollars in earnest of her intention to purchase the land at a specified price on declaring that, in case the purchaser failed to make the payments above specified, the deposit money should be forfeited as stipulated damages. *Held*, that such contract was not one of which the vendor could enforce specific performance, but was at most a mere option, authorizing the purchaser to elect to take a conveyance or forfeit the earnest-money; and hence, the purchaser having refused to complete the purchase, the broker could not recover commissions.

[As to power to option, as not being within authority given a broker to sell, see note in Ann. Cas. 1914C, 366.]

**Vendor and Purchaser—Sale of Property—Option to Purchase.**

2. An option to purchase real property on condition of making specified payments at specified dates is not an actual purchase or an executed contract to do so.

**Executors and Administrators—Claims—Proof.**

3. Claims of long standing, when filed against the estate of a decedent, should be scrutinized with care, and strong and convincing proof should be required before allowing them.

**Vendor and Purchaser—Earnest-money—Deposit—Failure to Purchase—Recovery of Earnest-money.**

4. Where a receipt for earnest-money on a contract for the sale of land provided that in case the purchaser failed to make the payments specified, the deposit should be forfeited as stipulated damages, the purchaser, having elected not to complete the sale, forfeited the deposit and could not recover the same from the vendor's estate.

From Multnomah: THOMAS J. CLEETON, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

These two actions grew out of claims by Charles N. Scott and Emma M. Brown against the estate of Sarah A. Merrill, deceased, and the appeals were taken by claimants from judgments of the Circuit Court disallowing two separate claims against the es-

tate of Sarah A. Merrill, deceased.  Both demands grew out of the following transaction: In May, 1909, Emma M. Brown paid to Sarah A. Merrill, now deceased, $1,000 as earnest-money on the purchase price of two lots in block 209, in the City of Portland.  In the negotiations Charles N. Scott acted as agent for Mrs. Merrill, who was represented to some extent by her husband, E. S. Merrill.  Mr. Merrill died in November, 1912, and his wife in January of the following year.  On January 7, 1913, Mr. Scott filed his claim against the estate in the sum of $1,480, and in April of that year Mrs. Brown filed her claim for $1,000, both of which were rejected by the administratrix.  The causes were tried together.  Affirmed.

For appellants there was a brief over the names of *Mr. Cicero M. Idleman* and *Mr. L. P. Hewitt,* with an oral argument by *Mr. Idleman.*

For respondents there was a brief over the names of *Mr. A. E. Clark* and *Mr. J. H. Middleton,* with an oral argument by *Mr. Clark.*

Mr. Justice Bean delivered the opinion of the court.

1. It appears that Scott and his associates interested Mrs. Brown in the Merrill property, and, at the time the earnest-money was paid, a receipt therefor was given in which the realty was described.  It was also stated therein, in effect, that the money was received as earnest of her intention to purchase the land in question from Sarah A. Merrill at the agreed price of $56,000, the balance to be paid, $24,000, by July 1, 1909, and the remainder in two years.  It was agreed that in case of failure of title or for any other cause, the land was not conveyed free of encumbrances to

E. M. Brown by a good and sufficient deed, the money should be returned to her; that, the "purchaser failing to make the payments above specified, the deposit money will be forfeited as stipulated damages." The receipt was signed Sarah A. Merrill, by Charles N. Scott, agent, and afterward ratified in writing by Sarah A. Merrill and E. S. Merrill. There appears on the receipt or contract a notation, as follows: "Subject to regular com 5% on first 2000 and 2½ on balance."

Some time after the negotiations were ended, Mr. Scott caused a copy of the contract to be recorded in the miscellaneous records of Multnomah County. Mrs. Brown did not execute any binding agreement with Mrs. Merrill for the purchase of the property. She had the option of purchasing the same or forfeiting the $1,000 deposit. No sale was ever made to Mrs. Brown, and she now claims a return of the deposit. Mr. Scott also seeks to obtain commission for his services.

Mr. F. W. Newell, who was associated with Mr. Scott and assisted in the negotiations, testified to the effect that, when Mrs. Brown declined to go on with the sale, he considered it a closed incident; but that she never gave him any reason therefor. It appears from the evidence that Mrs. Merrill was willing to complete the transaction; that her husband acted for her and was insistent upon Mrs. Brown closing the deal until the latter told him that she did not wish to see him any more; that, after the deposit was made, Mrs. Brown visited the premises a second time, and went into one of the houses on the land for the first time, where she was informed by one of the tenants that the rent paid for the property was $90 instead of $100 per month, as represented to her by Mrs. Merrill. The evidence shows, however, the latter amount to be

correct. It appears that one of the houses upon the
land was not owned by Mrs. Merrill; that the tenant
paid ground rent of $20 per month; and that Mrs.
Brown was somewhat dissatisfied with this.   It is not
shown that Mrs. Merrill was not perfectly able and
willing to convey complete title to the land and houses.
The dwelling which was owned by another, together
with the furniture, could have been purchased for $750.
Mrs. Brown, we think, gave as the real reason for not
purchasing the property negotiated for that she
"didn't want to deal at that price."   Some time after-
ward a sale was made by the Merrills to another party
for several thousand dollars more than the price
agreed upon with Mrs. Brown, and, in order to clear
the title from any effect of the contract with the latter
appearing on the record, J. F. Sedgwick, attorney for
Mrs. Merrill, obtained from Mrs. Brown on April 22,
1910, a quitclaim deed, referring to the Merrill-Brown
contract, in consideration of $1, releasing the land and
premises from all claim of Mrs. Brown by virtue of
the contract, and, as Mr. Sedgwick testifies, in full set-
tlement of the whole matter of the return of the $1,000
deposit.   Mrs. Brown afterward asked Mrs. Merrill
for a return of the $1,000, stating that they had sold
the property for several thousand dollars more than
she was to pay.   She was told by Mrs. Merrill to get
it if she could.   From all the evidence, there appears
no good reason why Mrs. Brown did not consummate
the deal, but that she abandoned it of her own volition.
Mr. Scott, the broker, failed to obtain a binding con-
tract of purchase from Mrs. Brown.

It is stated in 19 Cyc. 242:

"A commission ordinarily becomes payable upon
completion of the transaction which the broker was

employed to negotiate, in the absence of a stipulation in the contract of employment to the contrary.''

The principle stated by this court in *Stewart* v. *Will,* 65 Or. 138 (131 Pac. 1027), is invoked by the claimants:

''The rule is quite general that when a broker employed to negotiate the sale of land, without fault, concealment or other improper practice, produces a purchaser with whom the owner makes a valid, binding and enforceable contract for the sale of the premises the commission has been earned, though the contract for the sale of the land is never carried out.''

This rule does not assist Mr. Scott in the case under consideration, for the reason that the sale in question was never carried out, and no valid, binding or enforceable contract was made between the proposed purchaser and the owner, Mrs. Merrill. If a broker merely secures from a customer a contract by which the latter becomes entitled to consummate the purchase or forfeit the earnest-money or partial payments at his option, the broker is not entitled to a commission: 19 Cyc. 251, 252.

2. An option to buy on condition of making specified payments at specified dates is not an actual purchase nor an executed contract of purchase: *Darr* v. *Mummert,* 57 Neb. 378 (77 N. W. 767); *Heimberger* v. *Rudd,* 30 S. D. 289 (138 N. W. 374, 377); *Dwyer* v. *Raborn,* 6 Wash. 213 (33 Pac. 350). The general rule frequently applied in determining the right of a broker to a commission, namely, that he produce a purchaser ready, willing and able to purchase, as illustrated in the case of *Booth* v. *Moody,* 30 Or. 222 (46 Pac. 884), is used where the broker produces such purchaser and the vendor then refuses to make the sale. This law is not applicable to the claim of Mr. Scott, because the pur-

chaser produced by him was not ready and willing to purchase and refused so to do. In such cases it is not sufficient for the broker to obtain a mere option, where the vendor is bound to convey to the purchaser upon the terms of the contract, and the latter is not bound to purchase, but is entitled to do so at his option, and the contract becomes executed only upon acceptance by the purchaser: 39 Cyc. 1179, 1180.

3. Claims of long standing, when filed against an estate of a decedent, should be scrutinized with care; and in such cases strong and convincing proof should be required before allowing the same: 18 Cyc. 533, 534.

4. For the reason that Mrs. Brown refused to carry out the proposed purchase, she forfeited the $1,000 deposit, and is not entitled to a return thereof.

The findings of the Circuit Court were in accordance with the evidence, and the judgments should therefore be affirmed; and it is so ordered.    AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.