Argued July 8, affirmed October 23, 273 Or 814, 541 P2d 469,
petition for rehearing denied by opinion December 18, 1975

# DEAN VINCENT, INC., *Respondent, v.*
## CHEF JOE'S, INC., *Appellant.*

541 P2d 469
544 P2d 146

*James J. Damis,* Portland, argued the cause and filed briefs for appellant.

*Marvin S. W. Swire,* Portland, argued the cause for respondent. With him on the brief were Rosenberg, Swire & Riebe and Ellen Bachman, Portland.

DENECKE, J.

The plaintiff, a real estate broker, prevailed before the trial court in this action for a real estate commission.

On May 15th the defendant entered into an exclusive listing agreement with the plaintiff for the sale of the furniture, fixtures and equipment comprising defendant's restaurant. Ninety days was to be the exclusive period. The defendant set $110,000 as the minimum price. The commission was to be $10,000. The plaintiff advertised and made other attempts to make a sale. On June 21st defendant entered into an earnest money agreement with a party procured by

---

Holman, J., did not participate in this decision.

another broker whereby the defendant agreed to sell for $125,000. Defendant never notified plaintiff of this earnest money agreement. After the 90-day period had expired, the defendant entered into a contract of sale with the other party pursuant to the earnest money agreement. The broker procuring that sale was paid a commission of $12,500.

Plaintiff is claiming a commission because of the terms of the exclusive listing agreement. The agreement provides, in part:

"In the event said property is sold, leased or exchanged during the period of this contract, or Dean Vincent Inc. procures a purchaser ready, able and willing to purchase at the terms above specified, or places the Owner in touch with a purchaser to whom at any time within 180 days from the termination of the exclusive character of this contract the Owner sells or conveys said property, or if the Owner during the period of this contract withdraws the authority hereby given, the Owner shall pay to Dean Vincent Inc. the same fee as hereinabove specified, and in any such event, the amount of said fee shall be a lien upon said property. * * *."

The issue is, was the property "sold" during the period of the exclusive listing agreement?

When the earnest money agreement was executed the buyer deposited $500. The buyer's obligation to buy was conditioned upon obtaining a liquor license and securing at least a 7-year extension of the existing lease at a specified rental.

The effect of the execution of an earnest money agreement varies depending upon the circumstances. The trial court relied upon *Aldrich v. Forbes,* 237 Or 559, 385 P2d 618, 391 P2d 748 (1964). In *Aldrich* the trial court entered judgment for the plaintiffs in a forcible entry and detainer action. The defendants in

that action contended they could not be ousted because they had a vendees' interest in the land pursuant to an earnest money agreement. The agreement was conditioned upon the defendants obtaining a satisfactory loan. We held for the defendants and decided the earnest money agreement created a vendee-vendor relationship between the parties.

On the other hand, we commented in a footnote to *Aldrich*:

"* * * Where, by the terms of the earnest money agreement, the prospective purchaser is not obligated to purchase the property it has been held that only an option to purchase was created. *Herndon v. Armstrong*, 148 Or 602, 36 P2d 184, 38 P2d 44 (1934); *Strong v. Moore*, 118 Or 649, 245 P 505 (1926); *Scott v. Merrill's Estate*, 74 Or 568, 146 P 99 (1915)." 237 Or at 569, n 2.

As the effect of an earnest money agreement varies, we must look beyond the words of the agreement to determine what effect the parties intended to give an earnest money agreement executed by the defendant with a purchaser secured by another broker during the period during which plaintiff was given the exclusive right to sell the property. The seller, of course, would intend it to have as restricted a meaning as possible. In this case, however, the evidence is that the defendant's president realized defendant's execution of the earnest money agreement created at least a colorable claim by the plaintiff for a commission. Defendant's president told the broker who procured the purchaser who signed the earnest money agreement, "I will work whatever has to be worked out with Dean Vincent."

From the plaintiff broker's viewpoint, the purpose of the clause in the listing agreement was to enforce the exclusive provision of the agreement. For this purpose it was immaterial to the plaintiff broker

whether the defendant made a fully consummated sale through another broker during the exclusive period or merely a partially consummated transaction which was consummated after the exclusive period. In either event the defendant breached its agreement to give plaintiff the exclusive right to sell during the 90-day period.

■ Defendant reasons that under our decisions commencing with *Setser v. Commonwealth, Inc.*, 256 Or 11, 470 P2d 142 (1970), plaintiff would not be entitled to its commission when the defendant entered into the earnest money agreement because the sale had not yet been consummated. That is correct; however, that is not determinative of when property is "sold" within the meaning of the agreement.

■ The construction of the clause which would most fulfill the purposes for which it was intended is that the plaintiff is entitled to a commission if the defendant enters into an earnest money agreement within the exclusive period and that agreement at some time results in a completed transaction. We hold that is the correct interpretation. A construction to the contrary would encourage chicanery to circumscribe the exclusive feature of the listing agreement.

The Connecticut court in *Covino v. Pfeffer*, 160 Conn 212, 276 A2d 895 (1970), partially relied upon by the trial court, was influenced by this consideration. There, the agreement provided that the broker holding an exclusive listing agreement was entitled to a commission if the owner sold the property during the exclusive period. The owner secured a buyer and entered into an earnest money agreement during the exclusive period. The court held the broker was entitled to his commission, stating: "To place any other interpretation on the meaning of 'sale' in an exclusive sale contract would encourage connivance." 276 A2d at 897.

The defendant terms the idea that the property is "sold" during the exclusive listing period, but the commission is not payable until the transaction is fully consummated, plaintiff's "relation back" theory. The defendant contends the idea is contrary to our decision in *Zurcher v. Booth,* 80 Or 335, 157 P 147 (1916).

We do not so interpret *Zurcher v. Booth,* supra (80 Or 335). In that case the broker prevailed. The plaintiff broker had a contract with defendant to sell defendant's property. The broker secured an option agreement for the property which was later exercised. Plaintiff brought an action for his commission over six years after he secured the option agreement but less than six years after the option was exercised. The defendant claimed the statute of limitations had run because plaintiff's cause of action accrued when the option was secured. We held the broker was not entitled to his commission until the option was exercised. This is in no way contrary to our decision in this case that the plaintiff is not entitled to its commission unless and until the sale is ultimately consummated.

■ Defendant further contends that the clause requiring the plaintiff to be paid its commission if the property is sold during the exclusive period constitutes a penalty and not a valid provision for liquidated damages.

Defendant contends *Wright v. Schutt Construction,* 262 Or 619, 500 P2d 1045 (1972), requires such a decision. The defendant is in error.

In *Wright* the plaintiff broker had an exclusive listing agreement to sell the property at a price which would net the owner $200,000. The agreement provided that if the owner withdrew the authority to sell, the owner would pay the plaintiff the same commission the plaintiff would have earned if he had sold

the property. The owner withdrew plaintiff's authority; however, the trial court held that plaintiff could not recover the commission fixed in the agreement because the provision providing for that commission was a penalty and unenforceable.

We affirmed; however, we expressly held that such provisions for commissions were not necessarily under all circumstances penalties and, therefore, unenforceable. We held that the provision was unenforceable in the *Wright* case because the chances were "nonexistent" that the plaintiff would have sold the property for a net of $200,000 for the owner; such a price was unreasonable. For this reason the provision for payment of a commission based upon a net sales price of $200,000 was not a " 'genuine pre-estimate of the injury' or * * * ' a sum that is fixed as the equivalent of the injury which will probably be caused by the breach of contract,' * * *." 262 Or at 628.

In the present case the evidence supports the opposite conclusion. The agreement fixed the commission to be paid at $10,000, whereas the broker who sold the property sold it for $125,000 and earned a commission of $12,500.

Under the evidence in this case the provision for the payment of the commission was not a penalty provision.

Affirmed.

**ON PETITION FOR REHEARING**

James J. Damis, Portland, for the petition.
No appearance contra.

DENECKE, J.

We affirmed a judgment for a real estate commission against the defendant seller. Defendant filed a petition for rehearing pointing out that in our opinion we had not discussed two substantial contentions that it had made.

The parties entered into an exclusive listing agreement. We affirmed the trial court's decision that during the exclusive period the defendant had "sold" the property through another broker. The listing agreement provided that in the event the property was sold during the exclusive period, the defendant would pay the plaintiff broker the same $10,000 commission that the broker would have received if it had sold the property for defendant. The defendant contended this provision was unenforceable as it was a penalty and not a provision for liquidated damages.

■■ One argument defendant made in support of its contention was that this was a penalty clause because the harm that was caused by the breach is not one that is incapable or very difficult of accurate estimation. § 339(b), 1 Restatement, Contracts. We previously adopted this as part of the standard to determine when an agreement is a penalty. *Medak v. Hekimian,* 241 Or 38, 44, 404 P2d 203 (1965).[1]

What we should have added in our original opinion was that this standard contemplates a situation in which either the amount of harm or that any harm occurred, or both, is difficult or impossible to determine. The difficulty or impossibility is to be viewed as of the time of the making of the contract. *Medak v. Hekimian,* supra (241 Or at 44). Whether the realtor suffered any harm because of the defend-

[1] Forty years ago McCormick made what appears to be a compelling argument against the necessity of this part of the standard, McCormick, Damages § 148, 606-606 (1935), but we will continue to accept it in this case.

ant's breach would depend upon whether the realtor would have secured a buyer during the exclusive period. Particularly at the time of the entering into the listing agreement, it would be reasonable to believe that this could be difficult to prove.

*Atkinson v. Pacific Fire Extinguisher Co.,* 40 Cal2d 192, 253 P2d 18 (1953), is illustrative. The defendant sold a fire detection system to plaintiff. The system failed and plaintiff's mill was destroyed. The contract of sale contained a provision fixing the amount of damages to be awarded in the event of breach. The court held it was a valid liquidated damage provision. The court pointed out that the system was intended to provide protection from a wide variety of fires:

> "* * * Some of them would be slow burning, as in a bed of sawdust, where a loss resulting from the failure of the detection system might be negligible. Other fires might result only in a pitted floor. Still others would immediately envelop the buildings in flames and result in a very substantial loss. Looking ahead the parties had no way of knowing what type of fire might occur after a particular failure of the detection system. The merit in the defendant's contention lies in the argument that in no event could the parties have predicted what portion of the loss in any particular fire would be the proximate result of the failure of the detection system. * * *." 40 Cal2d at 195-196.

*Better Food Markets v. American Dist. Tel. Co.,* 40 Cal2d 179, 253 P2d 10 (1953), involved the same problem. There, a burglar alarm supplied by the defendant failed and plaintiff's store was burglarized.

Defendant also contends that if we do not require plaintiff to prove that it probably would have

been able to secure a purchaser, we are overruling *Brady v. East Portland Sheet Metal Wks.*, 222 Or 584, 352 P2d 144 (1960). That is not correct. In *Brady* the broker was suing for damages; however, there was no liquidated damage provision in the exclusive listing agreement. We held that in order to prove actual damages the plaintiff broker had to prove that she probably would have secured a purchaser.

Petition denied.