# DEAN VINCENT, INC., *Appellant,*
## *v.*
# STEARNS, *Respondent.*

555 P2d 448

*Richard O. Thomas,* of Luebke, Wallingford, Gaylord & Thomas, Portland, argued the cause and filed a brief for appellant.

*Vernon L. Richards,* of Howeiler and Richards, Sandy, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and McAllister, O'Connell, and Sloper, Justices.

SLOPER, J., Pro Tempore.

**SLOPER, J.,** Pro Tempore.

This is an action at law brought by the plaintiff, Dean Vincent, Inc., for a commission allegedly earned pursuant to a listing agreement and an earnest money receipt. The case was tried to the court without a jury. The defendant, Ruth Stearns, prevailed in the court below, and plaintiff appeals.

On June 14, 1972, plaintiff and defendant entered into a listing agreement for the sale of defendant's restaurant. The agreement granted the plaintiff an exclusive right for 180 days and a nonexclusive right for a like period thereafter to sell the defendant's property for $85,000. The plaintiff's commission was to be 10 per cent, or $8,500. Thereafter, and on August 19, 1972, the plaintiff obtained an offer from one John Gengler to purchase the property for $70,000. This offer was submitted to the defendant who was dissatisfied with the terms of the offer, but not the amount, and refused the offer and advised the plaintiff of a cloud against the title. On August 30, 1972, the defendant executed an earnest money agreement containing different terms, but for a price of $70,000. This agreement was presented to Gengler, who refused the offer because of the cloud on the title.

Shortly thereafter, the defendant suggested to Gengler that they enter into an option contract for the purchase of the property. This option contract was executed by the defendant and Gengler on August 31, 1972. The defendant advised Gengler that the option agreement would be a vehicle by which he would be assured of obtaining the property if he were willing to wait until the title matter could be cleared and also would defeat the plaintiff's claim for a commission if the option was not exercised until after the nonexclusive provisions of the listing agreement had expired. The defendant thereupon reduced the purchase price from $70,000 to $66,500, which reduction represented one-half of the amount of the plaintiff's commission based upon a selling price of $70,000. On March 7,

[ 535 ]

1973, while the listing agreement was in effect, Gengler exercised the option and tendered performance. The defendant refused to perform. Gengler then instituted a suit for specific performance, which resulted in a decree on April 19, 1974, granting that the option agreement be specifically performed. Finally, on June 5, 1974, the defendant and Gengler, by written agreement, mutually rescinded the option agreement, whereupon the court entered a judgment and decree dismissing the specific performance suit.

■ The plaintiff's complaint, as originally filed, based its right to a commission on the earnest money agreement executed on August 30, 1972, by the defendant and Gengler. During trial the plaintiff moved to conform to the proof and amend the complaint so as to include the listing agreement executed by the defendant as a further basis for its commission. The court, over the objection of the defendant, allowed such amendment. The allowance of the amendment was not an abuse of the trial court's discretion. The defendant's amended answer, in addition to a general denial, contains three affirmative defenses. The first alleges that the buyer failed and refused to enter into a binding contract to purchase; the second, that the plaintiff breached a fiduciary duty by permitting the buyer to rescind and by refunding the earnest money to the buyer; and third, that the plaintiff breached a fiduciary duty to defendant by failure to obtain a sufficient amount of earnest money to pay plaintiff's commission. Plaintiff's reply denies defendant's affirmative defenses. The plaintiff's sole assignment of error is that the court erred in concluding that consummation of the option agreement was necessary in order for the plaintiff to be entitled to a commission. Although the defendant does not cross appeal, the defendant assigns as error the admission of evidence not within the scope of the pleadings, and the failure to offer the best evidence of the option contract. These alleged errors are, of course, harmless if the judgment is affirmed. A cross-appeal is unnecessary since the

respondent does not contend that the judgment is erroneous, and the respondent does make the alleged evidentiary error an issue in this appeal. *See Artman v. Ray,* 263 Or 529, 501 P2d 63, 502 P2d 1376 (1972).

■■ Having determined that the court's action in amending the pleadings to conform to the proof was proper, we must reject the defendant's contention that the evidence was not within the scope of the pleadings. We determine from the record that the only evidence concerning the execution and terms of the option agreement in the plaintiff's case comes from the testimony of Gengler and plaintiff's Exhibit 3. When this testimony was offered, defendant made the objection that it was not the best evidence. The court overruled the objection. Plaintiff's Exhibit 3 is a copy of the Decree for Specific Performance entered by the Clackamas County Circuit Court on April 19, 1974, and included in the Findings of Fact is a finding that there was a valid option agreement existing between the defendant and Gengler and describes the terms of said agreement. Defendant's Exhibit A, being a Notice of Rescission, also acknowledges the option agreement and its terms. We conclude that the "best evidence rule" is not applicable to the case before us, simply because there is no real dispute as to the execution or the terms of the agreement. In *State v. White,* 4 Or App 151, 477 P2d 917 (1970), the court stated:

> "* * * We hold that the purpose of the best evidence rule is to secure the most reliable information as to the contents of documents when those contents are disputed. If, however, there is no good faith dispute, as here, over the accuracy of the document presented, the 'mystical ideal of seeking "the best evidence" or the "original document" ' will not be pursued." 4 Or App at 156. (Footnote omitted.)

In this case, there is no real dispute with respect to the contents of the relevant portions of the option contract. The testimony of Gengler is supported by the plaintiff's and defendant's exhibits referred to above. This rule is approved by McCormick on Evidence 578, § 243 (2d ed 1972), and, in addition, it is therein stated,

[ 537 ]

"* * * it seems clear that any departure from the regulations in respect to secondary evidence must be classed as harmless error."

■ Finding no error was committed by the trial court in admitting the evidence concerning the option agreement, we examine the terms of the listing agreement to ascertain if the facts as recited above entitled the plaintiff to a commission. The agreement provides, in part:

"In the event said property is sold, leased or exchanged during the period of this contract, or Dean Vincent Inc. procures a purchaser ready, able and willing to purchase at the terms above specified, or places the Owner in touch with a purchaser to whom at any time within 180 days from the termination of the exclusive character of this contract the Owner sells or conveys the said property, or if the Owner during the period of this contract withdraws the authority hereby given, the Owner shall pay to Dean Vincent Inc. the same fee as hereinabove specified, and in any such event, the amount of said fee shall be a lien upon said property. In case of suit or action on this contract, Owner agrees to pay in addition to the above specified fee such sum as the Court may adjudge reasonable as attorney's fees. Owner agrees to furnish Dean Vincent Inc. a complete itemized list of fixtures and equipment within ten days from the date of authorization to sell."

This court has recently construed this clause in *Dean Vincent v. Chef Joe's,* 75 Adv Sh 3604, 273 Or 814, 541 P2d 469 (1975). In that case, plaintiff and defendant entered into an exclusive listing agreement for the sale of defendant's restaurant. The exclusive period was to be 90 days. During the exclusive period the defendant entered into an earnest money agreement with a purchaser procured by another broker. The defendant never notified plaintiff of the earnest money agreement and, after the 90-day period, entered into a contract of sale pursuant to the earnest money agreement. The court, in determining what constitutes a sale, held:

"The construction of the clause which would most

fulfill the purposes for which it was intended is that the plaintiff is entitled to a commission if the defendant enters into an earnest money agreement within the exclusive period and that agreement at some time results in a completed transaction. We hold that is the correct interpretation. A construction to the contrary would encourage chicanery to circumscribe the exclusive feature of the listing agreement." 75 Adv Sh at 3606-07.

The court reasoned that it was immaterial to the plaintiff whether the defendant made a fully consummated sale during the exclusive period or merely a partially consummated transaction which was consummated after the exclusive period and that, in either event, the property was "sold" within the meaning of the agreement.

In this case, when Gengler attempted to exercise his option and tendered performance, the defendant refused to perform. This refusal was subsequently, by judicial decree, determined to be wrongful. We believe that such conduct on the part of the defendant constitutes a waiver of the "consummation of the sale," as a condition precedent to plaintiff's entitlement to a commission. In Red Carpet Real Estate v. Huygens, 270 Or 860, 530 P2d 46 (1974), this court adopted the present rule in Oregon concerning the failure to consummate the sale due to the wrongful act of the seller.

"* * * When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. If the contract is not consummated because of lack of financial ability of the buyer to perform or because of any other default of his, * * * there is no right to commission against the seller. *On the other hand, if the failure of completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid.* In short, in

the absence of default by the seller, the broker's right to commission against the seller comes into existence only when his buyer performs in accordance with the contract of sale." (Emphasis theirs.) 270 Or at 864-65, *quoting Ellsworth Dobbs, Inc. v. Johnson,* 50 NJ 528, 236 A2d 843, 30 ALR3d 1370 (1967).

The two rules of law contained in *Chef Joe's* and *Red Carpet* are combined in the case of *Gray v. Blake,* 128 Colo 381, 262 P2d 741 (1953), and support the contention of the plaintiff. In *Gray* the court stated:

"Even though a broker might not be entitled to compensation for merely procuring a prospective purchaser to take an option to purchase, his right to compensation accrues when the optionee subsequently exercises the option or is willing and able to exercise it, but is prevented from doing so by some act or omission on the part of the owner to comply with his part of the agreement." 262 P2d at 743.

It follows, then, that in this case, when Gengler exercised the option (partial performance) within the 180 days falling within the nonexclusive period of the listing agreement and the defendant failed to consummate the sale due to the defendant's wrongful refusal to perform, there was a timely "sale" within the meaning of the listing agreement. A contrary interpretation would encourage chicanery to circumscribe the provisions of the listing agreement and encourage parties to wrongfully refuse to perform binding contractual obligations.

We conclude that the trial judge was in error when he found that a "sale" was not consummated when Gengler exercised his option and tendered full performance on his part and defendant wrongfully refused to perform. The judgment of the trial court is reversed with instructions to enter judgment for plaintiff.