The **PROFESSIONAL GROUP, LTD.**, a corporation, Plaintiff-Appellee,

v.

**GREAT FALLS PROPERTIES, INC.**, a corporation; and **The Kissell Company**, a corporation, Defendants-Appellants.

No. 78–740.

Colorado Court of Appeals, Div. III.

June 12, 1980.

As Modified on Denial of Rehearing Aug. 7, 1980.

Certiorari Granted Dec. 22, 1980.

Mattlage, Maus & Lettunich, Daniel S. Maus, Steamboat Springs, for plaintiff-appellee.

Berenbaum & Weinberger, Edwin G. Perlmutter, Peter R. Bornstein, Denver, for defendants-appellants.

RULAND, Judge.

Appellants, Great Falls Properties, Inc., and the Kissell Company, appeal from a judgment of the district court awarding a 3% real estate commission to the Professional Group, Ltd., (the broker) in conjunction with the sale of the Ridgecrest Condominiums. We affirm.

The record reflects that Great Falls Properties, Inc., is a subsidiary of the Kissell Company. On December 8, 1975, Kissell

and the broker entered into an exclusive right to sell listing agreement for the 20 units which comprise the Ridgecrest Condominiums. The listing provided for a commission to the broker of 8% for each unit sold to an occupying tenant, 10% for the sale of each unit to any other person, 6% if the property was sold in bulk, and 3% if Kissell "sells" the property in bulk. The period of the listing was from December 3, 1975, to December 8, 1976. On December 6, 1976, the assistant vice president of Kissell notified the broker that the property had been "sold" in bulk.

The trial court determined that the broker had not abandoned the listing agreement, that Kissell had breached the terms of the listing agreement by failing to refer to the broker the names of any prospective purchasers, and that, therefore, the broker was entitled to a commission of 3%.

Kissell first contends that the trial court erred as a matter of law in concluding that the broker had not abandoned the listing. In support of this contention, it relies upon evidence of the inactivity of the broker in conjunction with attempts to sell the property, upon evidence that certain salespersons made negative comments about the subject property, upon the fact that serious structural defects appeared in the units making some units unmerchantable, and especially upon a letter written by the broker to Kissell in April of 1976.

Kissell concedes that the issue of abandonment is ordinarily an issue of fact. Here, there is competent evidence to support the trial court's finding that the letter in question was written only for the purpose of inducing Kissell to reduce the prices, that reduced sales activity by the broker resulted from the appearance of the structural defects (but that some sales efforts continued), and that the broker had no intent to abandon the listing. There being competent evidence to support this finding, we may not reverse that finding on appeal, *Broncucia v. McGee*, 173 Colo. 22, 475 P.2d 336 (1970), even though we might have reached a different conclusion. *Whatley v. Wood*, 157 Colo. 552, 404 P.2d 537 (1965).

Kissell next contends that the trial court erred as a matter of law in concluding that it had any obligation to refer prospective purchasers to the broker. It bases this contention on the fact that the obligation is set forth in the printed language of the listing agreement whereas its right to sell the units in bulk is contained in a typewritten addendum. Kissell argues that the trial court's interpretation of the agreement reaches an absurd result because enforcement of the obligation to refer might net the broker a 6% commission and defeat the owner's right to limit the commission to 3% by virtue of its own sale. Assuming, without deciding, that the trial court erred in its interpretation of the agreement, nevertheless, we conclude that entry of judgment in favor of the broker was correct, and hence we must affirm the judgment. *See Metropolitan Industrial Bank v. Great Western Products Corp.*, 158 Colo. 198, 405 P.2d 944 (1965); *Klipfel v. Neill*, 30 Colo.App. 428, 494 P.2d 115 (1972).

Kissell notified the broker prior to expiration of the listing that it had "sold" the condominium units in bulk. The term "sale" as used in the listing refers to any agreement of purchase and sale which is entered into during the listing period even though actual transfer of the property by deed does not take place until after the listing has expired. *See Dean Vincent, Inc. v. Chef Joe's, Inc.*, 273 Or. 814, 541 P.2d 469 (1975). This is so even though there may be minor modifications made in the agreement of sale subsequent to the date the listing expires. An interpretation of that term which required a consummated sale within the listing period would "encourage chicanery to circumscribe the exclusive feature of the listing agreement." *Dean Vincent, Inc., supra; see also Covino v. Pfeffer*, 160 Conn. 212, 276 A.2d 895 (1970). Thus, the fact that some terms of the transaction were altered between the date of the Kissell letter and the date of closing does not detract from the conclusion that, for purposes of the listing, the property was sold within listing period. And, contrary to Kissell's contention, we do not interpret the trial

court's findings as establishing that no agreement of purchase was entered into during the listing period.

Kissell finally contends that an award of a 3% commission under the circumstances of this case constitutes a penalty and not liquidated damages. However, this contention was not asserted in the motion for new trial and may not be asserted for the first time on appeal. C.R.C.P. 59.

Judgment affirmed.

PIERCE and BERMAN, JJ., concur.