**GREAT FALLS PROPERTIES, INC., a corporation, and the Kissell Company, a corporation, Petitioners,**

v.

**The PROFESSIONAL GROUP, LTD., a corporation, Respondent.**

No. 80SC255.

Supreme Court of Colorado, En Banc.

Aug. 16, 1982.

Berenbaum & Berenbaum, Peter R. Bornstein, Edwin G. Perlmutter, Denver, for petitioners.

Mattlage, Lettunich & Vanderbloemen, Anthony B. Lettunich, Steamboat Springs, for respondent.

LOHR, Justice.

This case involves a claim for a real estate commission based on the sale of the Ridgecrest Condominiums project in Steamboat Springs. The Routt County District Court held that the plaintiff-broker, the Professional Group, Ltd. (Professional), was entitled to a commission and entered judgment against the defendants-sellers, the Kissell Company and Great Falls Properties, Inc.[1] The Colorado Court of Appeals upheld that judgment, rejecting the defendants' claims that the plaintiff had abandoned its listing agreement and that the sale of the project did not occur until after the agreement had expired. *Professional Group, Ltd. v. Great Falls Properties, Inc.*, 44 Colo.App. 370, 622 P.2d 76 (1980). We granted certiorari and now affirm the decision of the court of appeals.

In 1975, Kissell was the owner of Ridgecrest Condominiums, a newly constructed condominium ownership project in Steamboat Springs. On December 8, 1975, Kissell entered into a written agreement with Professional listing that project for sale for a period ending on December 8, 1976. Under that agreement, if Professional sold all or substantially all of the units in the project to one purchaser, it was to receive a commission of 6% of the sales price. Kissell reserved the right to sell the entire complex by its own efforts, however, and agreed to pay the broker a 3% commission in the event of such a bulk sale.

Early in 1976 Professional took some steps to generate condominium sales. Its activities included attempts to interest a prospective buyer in a bulk purchase of the property, and distribution of a brochure and price list for Ridgecrest Condominiums among other brokers interested in Steamboat Springs real estate sales.

Professional soon became convinced that prices would have to be lowered and purchase terms liberalized if the condominium units were to be marketed successfully. After discussing the situation with a Kissell representative, Professional wrote a letter to Kissell on April 5, 1976, recommending such revisions and stating that without such changes Professional would not have any further interest in pursuing sale of the condominiums. Kissell did not make the requested adjustments.

In early spring of 1976 extensive structural problems were discovered in the Ridgecrest Condominiums. The defects were so severe that the tenants were required to vacate the premises and the certificate of occupancy was revoked. Kissell commenced major repairs to remedy the structural failures. Professional did little to attempt to sell the property after the construction defects came to light.

In the fall of 1976, Jeff Smythe, the ultimate buyer of Ridgecrest Condominiums, asked two of the representatives of the broker about the status of the project when they met by chance in a local restaurant. Smythe testified that the representatives joked about the construction difficulties and displayed little interest in pursuing a serious discussion. Smythe then contacted Kissell. Negotiations resulted, and the parties reached a verbal agreement for purchase and sale of the entire project early in December of 1976. On December 6 Kissell wrote to Professional to say that it had sold Ridgecrest Condominiums and so could not enter into any new agreements with Professional as to that property.[2] The negotiations between Kissell and Smythe contin-

---

1. Great Falls Properties, Inc., is a wholly owned subsidiary of the Kissell Company. No importance was attached to the distinction between these corporate entities during the trial, and in this opinion we refer to these parties interchangeably as Kissell.

2. In addition to the listing agreement, Professional had a contract with Kissell to manage the condominiums.

ued, and the sale was consummated on December 30, 1976. No written purchase and sale agreement preceded the closing.

Upon learning of the closing, Professional asserted a claim against Kissell for $25,155, being 3% of the sale price, based on the listing agreement. Kissell rejected the claim, and this litigation ensued.

Kissell defended by asserting that Professional had abandoned the listing agreement and that in any event the sale did not occur until the listing had expired. The trial court found "[t]hat the Plaintiff did not intend to terminate or abandon the listing contract and that the Defendants took no action which might be interpreted as an acknowledgement of acceptance of any voluntary termination or abandonment of the contract by Plaintiff."[3] It specifically found that Professional did not intend to terminate the listing agreement by its April 5, 1976, letter but that the purpose of the letter was to induce Kissell to lower the prices. The court further found that the lack of sales efforts by Professional following May of 1976 was based on the fact that the project was undergoing extensive repairs, and the plaintiff was merely awaiting completion of the project so that the units would have market acceptance. The court found additionally that, unknown to Professional, Kissell had negotiated with Smythe for some period of time before December 6, 1976, and that this conduct breached the listing agreement requirement that the owner refer to Professional all inquiries from prospective purchasers received during the listing term. Accordingly, the trial court entered judgment for Professional for the full amount of its claimed commission.

In affirming the judgment, the court of appeals first approved the trial court's determination that Professional had not abandoned the listing, holding that this finding was supported by competent evidence in the record. The court of appeals then noted Kissell's argument that to construe the list-ing agreement to require it to refer prospective purchasers to Professional would defeat Kissell's own specifically reserved right to sell the condominium project itself and thereby limit Professional's commission to 3%. Assuming the soundness of this argument, it nevertheless upheld the trial court's judgment on an alternative ground. Specifically, it held that a sale occurred within the listing period even though the closing did not take place until after the listing expired, and that, as a result, Professional became entitled to a 3% commission by the terms of the listing agreement. We conclude that the court of appeals correctly resolved the issues in this case.

## I.

■ We have recognized that a broker can abandon a listing contract and thereby become precluded from recovery of a commission. *Houston v. H. G. Wolff & Son Investment Co.*, 94 Colo. 73, 28 P.2d 255 (1933); *Zeigler v. Butler*, 64 Colo. 274, 171 P. 64 (1918); see *Annot.* 46 A.L.R.2d 848, 885 (1956); *Annot.* 27 A.L.R.2d 1348, 1402 (1953). Whether abandonment has occurred is a question of fact, see *Houston v. H. G. Wolff & Son, Investment Co., supra; Zeigler v. Butler, supra,* and is largely based on the broker's intention, which may be inferred from the facts and circumstances proved, see, *Herb Tillman Co. v. Sissel*, 348 S.W.2d 819 (Mo.App.1961); *cf., e.g., Beaver Park Water, Inc. v. City of Victor*, 649 P.2d 300 (Colo.1982) (as applied to water rights, abandonment requires a concurrence of non-use and intent to abandon); *Hoff v. Girdler Corp.*, 104 Colo. 56, 88 P.2d 100 (1939) (as applied to oil and gas leases, abandonment consists of two factors: the intention and the act).

■ In the present case there was evidence that the strong language in Professional's April 5 letter to Kissell was for the purpose of emphasizing the strength of Professional's opinion that the prices should be lowered and the terms of sale liberalized.

<hr>

3. The addendum to the listing agreement, prepared by Kissell, permitted termination by either party without cause by giving 60 days notice. Kissell does not contend that either party terminated the agreement under this clause.

Moreover, the author of the letter testified that a Kissell representative suggested that Professional's opinions be vigorously expressed to assure that the responsible Kissell officer would give serious attention to those opinions. There was also evidence that Professional's lack of sales activity after the spring of 1976 was based on its view that the repairs must be completed before the condominium project would be salable. In short, the evidence was in conflict on the abandonment issue. As there was sufficient evidence in the record to support the trial court's finding that Professional did not intend to abandon its listing agreement, that determination cannot be reversed on appeal. *Broncucia v. McGee,* 173 Colo. 22, 475 P.2d 336 (1970); *Whatley v. Wood,* 157 Colo. 552, 404 P.2d 537 (1965).

## II.

The court of appeals was also correct in holding that the sale of the Ridgecrest Condominiums to Smythe occurred during the listing period. The December 6, 1976, letter from Kissell to Professional expressly acknowledged that a sale had occurred before the letter was written. A December 7 Kissell internal memorandum and a December 8 letter from Kissell to Smythe echoed that statement. Although some provisions of the sale transaction were amended after the December 8, 1976, expiration date of the listing, Smythe testified that the transaction was closed under essentially the same terms as agreed upon before December 6, 1976.

■ The printed form listing contract specifies that Kissell "list[s] with [Professional], from December 8, 1975, to December 8, 1976, inclusive" the Ridgecrest Condominiums. The critical provision of the listing contract is part of a typewritten addendum to the printed-form agreement. It provides:

In the event Owner [Kissell] sells all or substantially all of the units to one purchaser or purchasers, then the commission to be paid to Broker [Professional] shall be three (3%) percent of the sales price.

The uncontroverted evidence established that this typewritten provision was prepared by Kissell. Any ambiguities in that passage, therefore, must be construed most strongly against Kissell. *E.g., Perl-Mack Enterprises Co. v. City and County of Denver,* 194 Colo. 4, 568 P.2d 468 (1977).

■ The Colorado Court of Appeals concluded that the term "sells" as used in the listing agreement refers to any agreement of purchase and sale entered into during the listing period even though actual transfer of title does not take place until the listing has expired. *See Wray v. Carpenter,* 16 Colo. 271, 27 P. 248 (1891). This construction protects the bargained-for right of Professional to compensation in the event of a sale by Kissell during the listing period by preventing avoidance of payment of a commission through deferral of the closing date to a time after expiration of the listing. It is consistent as well with the resolution of any ambiguity in the addendum against Kissell, the party that prepared it. This interpretation of the listing agreement also finds support in the decisions of other states. *See Dean Vincent, Inc. v. Chef Joe's, Inc.,* 273 Or. 814, 541 P.2d 469 (1975); *Covino v. Pfeffer,* 160 Conn. 212, 276 A.2d 895 (1970). We hold that the court of appeals correctly construed the listing agreement.[4]

■ We also agree with the court of appeals that minor modifications in a sales agreement between the time of expiration of the listing contract and the closing do not defeat the broker's claim for a commission based on the sale within the listing period. *Cf. e.g., Rauch v. Rhoades,* 172

---

4. We note that the verbal agreement between Kissell and Smythe may have been void for noncompliance with the statute of frauds. *See* section 38-10-108, C.R.S.1973. In this case, however, the transaction was consummated as agreed. We need not decide whether a commission would be payable, under a listing agreement like the one construed here, where the owner enters into an oral contract for the purchase and sale of real property and the buyer later elects not to complete the transaction. *See Dean Vincent, Inc. v. Chef Joe's, Inc., supra.*

Colo. 152, 470 P.2d 854 (1970); *Brewer v. Williams,* 147 Colo. 146, 362 P.2d 1033 (1961); *Houston v. H. G. Wolff & Son Investment Co., supra* (all to the effect that a broker has the right to a commission for obtaining a buyer even though the seller and buyer may negotiate further and close the sale contract on terms slightly different than specified in the listing agreement).

The remaining contentions of error raised by Kissell are without merit. Accordingly, we affirm the decision of the court of appeals, which in turn affirms the judgment of the trial court.

LEE, J., does not participate.